## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHEN DISTRICT OF GEORGIA

| | |
|---|---|
| FLOORCOVERINGS INTERNATIONAL, LTD.<br>5390 Triangle Parkway, Suite 125<br>Norcross, GA 30092<br><br>       Plaintiff,<br><br>v.<br><br>Roger Garrett<br>292 College Avenue South, Apt. 19<br>Monmouth, OR 97361<br><br>       Defendant. | :<br>:<br>:<br>:  **Civil Action No.**<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

## PARTIES

1.     Floorcoverings International, Ltd. ("FCI") is a Georgia corporation with its principal place of business located in Gwinnett County, Georgia, located at 5390 Triangle Parkway, Suite 125, Norcross, Georgia 30092 ("FCI's Headquarters").

2.     Roger Garrett ("Garrett") is an individual and resident of Oregon, and upon information and belief residing at 292 College Avenue South, Apartment 19, Monmouth, OR 97361.

3. At all times referred to herein, FCI has engaged in business as the national franchisor of Floorcoverings International franchises, which offer soft and hard flooring products to certain customers. As of December 31, 2021, there were 206 Floorcoverings International franchisees operating in the United States and Canada.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §1332(a) in that the parties are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of costs and interest.

5. Venue for this action is predicated upon 28 U.S.C. §1391(b) as FCI resides and does business in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

6. Jurisdiction and venue are proper in this judicial district pursuant to the mandatory forum and venue selection clause contained in Article XII(D) of the parties' Franchise Agreement (defined below).

7. Defendant received valuable and continuing services emanating from FCI's Headquarters in Georgia, including, but not limited to, training, assistance, and support throughout his relationship with FCI.

8. Defendant routinely interacted, corresponded, and communicated with individuals at FCI's Headquarters over the course of his relationship with FCI.

9. Defendant conducted ongoing communications with FCI employees at FCI's Headquarters.

10. Defendant received daily, weekly, and monthly reporting from FCI's Headquarters.

11. Defendant paid franchise fees directly to FCI Headquarters throughout his relationship with FCI.

12. For at least the foregoing reasons, Defendant is subject to personal jurisdiction in Georgia pursuant to the Georgia Long Arm Statute, O.C.G.A. § 9-10-91.

## BACKGROUND

### The Floor Coverings International System

13. FCI is the international franchisor of Floor Coverings International businesses (each, a "Franchised Business") and has offered franchises in the mobile retail floorcovering business since February 1998.

14. FCI owns the mark "Floor Coverings International," which was registered on June 19, 2001, on the Principal Register of the United States Patent and Trademark Office ("USPTO") at Registration No. 2,461,349. FCI also owns the

marks "Floor Coverings International/The Flooring Store at Your Door" and "FCI" which are registered on the USPTO's Principal Register of Trademarks at Nos. 2,635,911 and 2,449,016 respectively (collectively, the "Marks").

15. FCI franchisees are licensed to use the Marks to operate under FCI's business system pursuant to the terms and conditions of a FCI franchise agreement.

16. FCI franchisees are also licensed to use FCI's proprietary business system, policies, procedures and standards and specifications, all of which are disclosed to FCI franchisees in confidence.

## The Franchise Agreement

17. On December 10, 2016, FCI and Garrett entered into a franchise agreement (the "Franchise Agreement") pursuant to which Garrett was granted the right and undertook the obligation to operate a "Floor Coverings International" franchise (the "Franchised Business") in certain zip codes in Texas, as more fully set forth in the Franchise Agreement (the "Territory"). A true and correct copy of the Franchise Agreement is attached as Exhibit "A."

18. Pursuant to Article II of the Franchise Agreement, the term of the Franchise Agreement was ten years.

19. Pursuant to Article III(B)(1), Garrett was required to pay a continuing royalty fee in an amount equal to five percent of Gross Sales (as defined in the

Franchise Agreement) or a minimum of $1,250 per month in his first calendar year of operation, $2,083 in the second calendar year of operation, or $2,917 per month for each month thereafter, whichever is greater (the "Continuing Royalty").

20. Pursuant to Article III(E) of the Franchise Agreement, Garrett agreed to pay FCI interest at the rate of 1.5 percent per month or the maximum rate allowed by law, whichever is less, on all pay due amounts due to FCI under the Franchise Agreement.

21. Pursuant to Article XI of the Franchise Agreement, Garrett agreed to indemnify and hold FCI harmless against, and to reimburse FCI for, all damages arising from Garrett's operation of the Franchised Business.

22. In addition, Article XII(G) of the Franchise Agreement provides that in the event of any judicial proceeding to enforce any term of the Franchise Agreement, the prevailing party is entitled to recover its costs and reasonable attorneys' fees incurred with such proceeding.

## The Loan Agreements

23. On December 30, 2016, FCI and Garrett entered into two promissory notes.

24. Pursuant to the first promissory note, FCI financed $24,500 of the initial franchise fee, payable over 3 years at 6% interest, with the first payment due on May

25, 2017 (the "First Promissory Note"). A true and correct copy of the First Promissory Note is attached hereto as Exhibit "B."

25. Pursuant to the second promissory note, FCI financed $77,000 of the territory fee, payable over 5 years at 6% interest, with the first payment due on May 25, 2017 (the "Second Promissory Note"). A true and correct copy of the Second Promissory Note is attached hereto as Exhibit "C" (collectively, the first and second promissory notes are referred to as the "Loan Agreements").

<u>Garrett's Defaults Under The Loan Agreements, Franchise Agreement and Abandonment of the Franchised Business</u>

26. Garrett last made payment to FCI pursuant to the Loan Agreements on September 27, 2021.

27. Thereafter, Garrett failed to make the October payments due under the Loan Agreements and otherwise ceased making any payments on the Loan Agreements.

28. Garrett owes FCI $12,574.76 under the First Promissory Note and $64,536.88 under the Second Promissory Note.

29. Garrett last reported the Franchised Business' gross sales, and paid Continuing Royalties, to FCI on November 30, 2021, and thereafter ceased communicating with FCI.

30. FCI learned that Garrett ceased operating, and otherwise abandoned, the Franchised Business on December 1, 2021.

31. Despite demand, Garrett has failed, and refused, to make the payments due under the Loan Agreements.

32. Despite demand, Garrett has failed, and refused, to resume operation of the Franchise Business as required under the Franchise Agreement.

### FCI'S DAMAGES AS A RESULT OF GARRETT'S BREACHES

33. The remains a balance due under the Loan Agreements in amount of $77,114.74.

34. At the time Garrett abandoned the Franchised Business, the required minimum monthly royalty payment was $2,917 per month.

35. In addition, as a direct and proximate result of Garrett's breach of the Franchise Agreement, FCI has been damaged in the amount of $175,020, which represents the future minimum monthly Continuing Royalty payments due under the Franchise Agreement from the date he abandoned the Franchised Business through the remainder of the term of the Franchise Agreement.

36. FCI made demand on Garrett for payment of the future minimum monthly Continuing Royalty payments due under the Franchise Agreement and the

monies due under the Loan Agreements, but Garrett refused, and failed, to pay FCI such sums as due under the Franchise Agreement and Loan Agreements.

37. As a direct and proximate result of Garrett's breach of the Franchise Agreement and Loan Agreements, FCI has been damaged in the amount of $252,131.74.

## COUNT I

## BREACH OF CONTRACT

38. FCI incorporates by reference the averments set forth above as though the same were set forth at length herein.

39. FCI has performed all of its obligations under the Franchise Agreement.

40. FCI has performed all of its obligations under the Loan Agreements.

41. Garrett has breached the Franchise Agreement by failing to operate the Franchised Business for the full term of the agreement, and by failing to pay the required minimum monthly Continuing Royalty payments to FCI for the balance of the term.

42. Garrett has breached the Loan Agreements by failing to pay the required principal and interest due under the terms of the First and Second Promissory Notes.

43. As a direct and proximate result of Garrett's breach, FCI has been damaged in the amount in the amount of $252,131.74.

## PRAYER FOR RELIEF

**WHEREFORE**, Floorcoverings International, Ltd. demands:

(a) Judgment against the Defendant in the amount of to be determined at trial but which exceeds $252,131.74, plus interest, costs, and attorneys' fees;

(b) Attorneys' fees and costs; and

(c) Such other relief as this Court deems just.

Dated: September 6, 2022

/s/ J.A. Schneider
J.A. Schneider
Georgia Bar No. 141437
Jonathan M. Nussbaum
Georgia Bar No. 162672

**THOMPSON HINE LLP**
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, Georgia 30326
Telephone: 404-541-2900
Facsimile: 404-541-2905
*ja.schneider@thompsonhine.com*
*jonathan.nussbaum@thompsonhine.com*